**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Roberto Carlos Montalvo Hernandez, | No. CV-26-02619-PHX-RM (JZB) |
| Petitioner, | **ORDER** |
| v. | |
| Todd M Lyons, et al., | |
| Respondents. | |

Petitioner filed this action under § 2241, challenging his immigration detention. (Doc. 1.) The Court issued an Order to Show Cause ("OSC") why the § 2241 Petition should not be granted. (Doc. 3.) Upon review of the briefing, the Court will grant the Petition and direct Petitioner's immediate release from custody.

**I.    Background**

Petitioner is a native and citizen of El Salvador. (Doc. 1 at 2.) Petitioner entered the United States in 2003 without inspection, was issued a Notice to Appear, and was thereafter released on bond pending his removal proceedings. (*Id.* at 11.) On January 2, 2025, an immigration judge administratively closed his removal proceedings. (*Id.* at 2.) On March 10, 2026, when he appeared for an appointment to provide biometric information regarding a petition for alien relative filed by his wife, a United States citizen, Immigration and Customs Enforcement agents detained him. (*Id.* at 2-3.) Petitioner contends his detention without a pre-deprivation hearing violates his rights to procedural and substantive due process, constitutes unlawful re-detention, and violates the Immigration and

Nationality Act and its implementing regulations. He seeks release from custody. (*See* Doc. 1.)

**II.    Discussion**

**A.  Pre-Deprivation Hearing**

Respondents maintain that "there is no statutory or regulatory requirement that entitles Petitioner to a 'pre-deprivation' hearing, much less one involving burden-shifting against the government. *See generally* 8 U.S.C. §§ 1225; 1226; 1231." (Doc. 4 at 2.) Respondents argue that "creating an extra-statutory remedy is both improper and superfluous." (*Id.*) Respondents ignore, however, that "[e]ven when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *J.C.E.P. v. Wofford*, No. 1:25-CV-01559-EFB (HC), 2025 WL 3268273 at *3 (E.D. Cal. Nov. 24, 2025) (citing *Young v. Harper*, 520 U.S. 143, 147-49 (1997)).

Rather, Respondents cite *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022), for its statement that the "existing agency procedures" sufficiently protect liberty interest of aliens and "mitigate the risk of erroneous deprivation."  (Doc. 4 at 3.)[1] Respondents highlight the following quote from *Rodriguez Diaz*:  "In short, the agency's decision to detain Rodriguez Diaz was subject to numerous levels of review, each offering Rodriguez Diaz the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small.'" *Id.* (quoting *Yagman v. Garcetti*, 852 F.3d 859, 865 (9th Cir. 2017)).

The key distinction between Petitioner's case and *Rodriguez Diaz*, however, is that Petitioner was previously released on bond pursuant to a finding that he represents neither a flight risk nor a danger.  (Doc. 1 at 11.) In *Rodriguez Diaz*, no immigration judge had ever made such a finding. *See* 53 F.4th 1189. Respondents offer no argument, much less

---

[1] Respondents assert that the Ninth Circuit in *Rodriguez Diaz* held that the post-detention procedures available under 8 U.S.C. § 1226(a) are completely constitutionally sufficient, but the court in Rodriguez Diaz only addressed the procedures due to a detainee after he is detained; the court did not address what procedures are due prior to detention. 53 F.4th 1189 (9th Cir. 2022).

evidence, that Petitioner's bond was revoked pursuant to the applicable regulations or that there was a change in circumstances that could justify his re-detention. (*See* Doc. 4.)

Additional cases cited by Respondents are inapposite to the circumstances presented here. (*See id.* at 3-4.) Respondents cite *United States v. Cisneros*, No. 19-CR-00280-RS-5, 2021 WL 5908407, at *4 (N.D. Cal. Dec. 14, 2021), for the proposition that "[t]he law does not require a hearing before arrest where a noncitizen released from ICE custody had been picked up by the San Francisco Police Department for assault." (*Id.* at 3-4.) But that is because probable cause would be present to support an individual's arrest in the first instance.

Respondents also point to *Reyes v. King*, No. 19 CIV. 8674 (KPF), 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021), which held "the Court is not persuaded that it should find a due process right to a pre-detention hearing where a noncitizen, subject to pending removal proceedings and in the midst of litigating a dispute over the BIA's decision to revoke his bond, is at risk of being re-detained after being at liberty for more than two years." But *Reyes* involved a scenario where there *was* a purported justification for revoking petitioner's bond and, moreover, the district court ordered petitioner to receive a bond hearing within seven days of being re-detained if respondents elected to re-detain him.

Finally, in *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *8 (N.D. Okla. June 12, 2025), while the district court determined the statutory scheme did not prohibit the revocation of petitioner's bond, the court did not address petitioner's constitutional claim.

Indeed, as stated in the OSC, there is a body of authority holding that individuals like Petitioner who were released from immigration detention are entitled to a pre-deprivation hearing prior to any rearrest or detention as a matter of due process. *See*, *e.g.*, *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021 (N.D. Cal. 2025) (holding that petitioner released on bond had protected liberty interest in continued release); *Tinoco v. Noem*, ___ F. Supp. 3d ___, 2025 WL 3567862, at *2, *5-7 (E.D. Cal. Dec. 14, 2025) (granting

petitioner's temporary restraining order for immediate release from custody where petitioner was released on an order of release on recognizance, re-detained three years later, and was not given a bond hearing); *Aguirre Solis v. Noem*, 2:26-cv-00053-RFB-EJY, 2026 WL 396432, at *2, *5 (D. Nev. Feb. 12, 2026) (concluding petitioner's re-detention after release on recognizance without a hearing and opportunity for release was unlawful under the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment and ordering his immediate release from detention).

The three-pronged test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Respondents acknowledge that the *Mathews* test has been used by many courts to analyze what process is due in the immigration detention context. (Doc. 4 at 5.) To determine whether procedural protections satisfy the Due Process Clause, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

As to the first factor, being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525, (2004) (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention). An individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"); *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens

is always constrained by the requirements of due process."). The first *Mathews* factor favors Petitioner.

As to the second factor, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." *Dushyant v. Albarran*, No. 1:26-cv-00502-JLT-SKO (HC), 2026 WL 682887, at *4 (E.D. Cal. Mar. 11, 2026) (citation omitted). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." *Id.* (citing *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). No neutral arbiter has determined that Petitioner is a flight risk or danger to the community. "Given the absence of any procedural safeguards to determine if his detention was justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" *Id.* (citation omitted). The Court concludes there is a risk of erroneous deprivation if no facts are provided to justify the re-detention of individuals without a neutral decisionmaker first evaluating whether re-detention is warranted. The second *Mathews* factor weighs in favor of Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). And Respondents' interest here is even lower because Petitioner was previously released on bond after immigration officials necessarily determined he was not a flight risk or danger to the community, and there is no indication Petitioner violated any condition of his release on bond. *See Pinchi v. Noem*, No. 25cv05632-RMI, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025); *see also Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. July 11, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained."); *Telenchana v. Hermosillo*, 2:26-cv-00363-GJL, 2026 WL 696806, at *9 (W.D. Wash. Mar. 12, 2026)

(concluding that re-detention of petitioners who had been released on their own recognizance violated due process under the *Mathews* framework because petitioners had "established liberty interests," "the absence of pre-deprivation procedures in their re-detentions created an unacceptably high risk of erroneous deprivations," and "the governmental interest in their re-detention without adequate process [was] minimal or non-existent").

The Court finds that the *Mathews* factors weigh in favor of determining Petitioner was entitled to a hearing before he was re-detained. The Court finds that immediate release, rather than requiring a bond hearing, is the appropriate remedy. *See Ruiz v. Noem*, No. 3:25-CV-03536-RBM-BJW, 2025 WL 3719888, at *2 (S.D. Cal. Dec. 23, 2025) ("[G]iven Respondents' 'weighty' interest in the 'efficient administration of the immigration laws,' *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), it does not make sense to require Respondents to set a new bond hearing before a potentially new immigration judge just to duplicate the same efforts taken at the [previous] hearing."); *Ramirez Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *6 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release").

### B. Detention Under § 1225(b)(2)(A)

Respondents also argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). However, Respondents ignore the fact that Petitioner was placed in removal proceedings under section 212(a)(6)(A)(i) of the Immigration and Nationality Act as "[a]n alien present in the United States without having been admitted or paroled," rather than as "an arriving alien" and applicant for admission under 8 U.S.C. § 1225(b). (Doc. 1-1 at 1.) The Court finds that Petitioner is not "seeking admission" such that he is subject to detention under § 1225(b)(2)(A). *See Echevarria v. Bondi*, CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282 (D. Ariz. 2025).

For all these reasons, the Petition will be granted, and Petitioner will be ordered

- 6 -

released from custody immediately.

**IT IS ORDERED** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to the due process claim in Count One.  The remainder of the Petition is denied as moot.

**IT IS FURTHER ORDERED** Respondents must **immediately release** Petitioner from custody under the same conditions that existed before his re-detention.

**IT IS FURTHER ORDERED** Respondents must provide a notice of compliance within **two (2) days** of Petitioner's release.

**IT IS FURTHER ORDERED** any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 8th day of May, 2026.

_____
Honorable Rosemary Márquez
United States District Judge